# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**ADAM S. DAVIS,**
**Claimant Below, Petitioner**

**FILED**

**June 8, 2017**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs.)   No. 16-0736**  (BOR Appeal No. 2050972)
(Claim No. 2014031090)

**PINNACLE MINING COMPANY, LLC,**
**Employer Below, Respondent**

### MEMORANDUM DECISION

Petitioner Adam S. Davis, by Gregory Prudich, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Pinnacle Mining Company, LLC, by H. Dill Battle III, its attorney, filed a timely response.

The issue presented in the instant appeal is Mr. Davis's request for authorization of three transforaminal epidural steroid injections. On April 21, 2015, the claims administrator denied Mr. Davis's request for authorization of a series of three transforaminal epidural steroid injections at L5-S1.[1] The Office of Judges affirmed the claims administrator's decision in its Order dated November 30, 2015. This appeal arises from the Board of Review's Final Order dated July 6, 2016, in which the Board affirmed the Order of the Workers' Compensation Office of Judges. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] The claims administrator's decision indicates that the injections presently at issue have been requested for the treatment of lumbar radiculopathy. We note that the treatment request is not contained within the evidentiary record. However, we also note that lumbar radiculopathy is not a compensable component of Mr. Davis's claim for workers' compensation benefits.

1

Mr. Davis injured his lower back while lifting the lid of a toolbox on April 14, 2014. On April 18, 2014, a Report of Injury was completed by his primary care physician, Michael Muscari, D.O. Dr. Muscari listed Mr. Davis's diagnoses as a lumbar strain and lumbago. Additionally, x-rays of Mr. Davis's lumbar spine obtained on April 18, 2014, revealed evidence of mild, stable disc space narrowing at L5-S1 when compared with a prior study. A lumbar spine MRI performed on April 22, 2014, revealed evidence of an annular tear at L4-5 and a mild disc protrusion at L5-S1. Mr. Davis's claim for workers' compensation benefits was held compensable for a lumbar sprain/strain on April 25, 2014.

On May 5, 2014, Mr. Davis was examined by orthopedic surgeon Rajesh Patel, M.D. Dr. Patel noted that x-rays of Mr. Davis's lumbar spine revealed degenerative disc disease. He also diagnosed Mr. Davis with an annular tear at L4-5, a disc herniation at L5-S1, a lumbar sprain, lumbago, and lumbar radiculopathy. Dr. Patel recommended a course of physical therapy and L5-S1 transforaminal epidural steroid injections. He re-examined Mr. Davis on July 9, 2014. Although Dr. Patel noted that Mr. Davis's condition is improving, he recommended a pain clinic referral for the purpose of obtaining transforaminal epidural steroid injections.

Jerry Scott, M.D., performed an independent medical evaluation on August 18, 2014, and authored a report memorializing his findings on the same date. Dr. Scott opined that Mr. Davis's diagnosis pertaining to the April 14, 2014, injury is a lumbar strain/sprain. He further opined that the medical evidence of record demonstrates that the majority of Mr. Davis's lumbar spine pathology is degenerative in nature and predates the April 14, 2014, injury. Dr. Scott then opined that Mr. Davis has reached maximum medical improvement with respect to the April 14, 2014, injury, and further opined that any further treatment, including pain management, would be aimed at treating underlying pre-existing degenerative disease.

Radiologist Kenneth Fortgang, M.D., performed an age of injury analysis on September 9, 2014. Dr. Fortgang opined that the findings at L4-5 and L5-S1 revealed via the April 22, 2014, MRI are chronic, longstanding, and are not associated with the April 14, 2014, injury. Specifically, he noted that the indicators of chronicity in the instant claim are the presence of spondylosis, loss of disc space height, and disc desiccation. Prasadarao Mukkamala, M.D., performed an independent medical evaluation on November 20, 2014, and authored a report memorializing his findings on November 21, 2014. Dr. Mukkamala concurred with Dr. Fortgang's conclusion that the L5-S1 disc herniation revealed via MRI pre-existed the April 14, 2014, injury. He further opined that a referral for a pain management consultation is unnecessary in relation to the April 14, 2014, injury because the compensable injury is simply a soft tissue sprain, and any treatment modalities offered by a pain clinic would address non-compensable degenerative conditions.

On December 9, 2014, Dr. Muscari, Mr. Davis's primary care physician, testified via deposition. Dr. Muscari testified that he disagrees with Dr. Scott's conclusion that Mr. Davis has reached maximum medical improvement in relation to the compensable injury. He further testified that he does not believe that Mr. Davis's current condition is related to degenerative changes, but rather is the result of an acute occurrence. Finally, Dr. Muscari testified that the L5-

S1 disc herniation most likely occurred at the time of the April 14, 2014, injury and will require further treatment in the form of pain management.

On December 12, 2014, Dr. Patel testified via deposition. Dr. Patel testified that the April 22, 2014, MRI revealed minimal degenerative changes, an L4-5 annular tear, and an L5-S1 disc herniation. He further testified that he believes that Mr. Davis's current symptoms arose from an acute injury rather than degenerative changes, and opined that the use of transforaminal epidural steroid injections is necessary for the treatment of Mr. Davis's current symptoms.

On April 21, 2015, the claims administrator denied a request for authorization of three transforaminal epidural steroid injections at L5-S1. Dr. Scott authored an addendum to his prior independent medical evaluation report on August 26, 2015. He opined that the requested series of L5-S1 transforaminal epidural steroid injections would be aimed at treating pre-existing conditions, which are unrelated to the instant claim and should not be authorized. Dr. Scott took note of the conclusions expressed by Dr. Fortgang and opined that the mechanism of injury described by Mr. Davis is inconsistent with the degree of structural changes noted in the April 22, 2014, MRI report. Finally, he noted that the current use of transforaminal epidural steroid injections for the treatment of the compensable lumbar strain/sprain is inconsistent with the treatment guidelines enumerated in West Virginia Code of State Rules § 85-20 (2006).

In its Order affirming the April 21, 2015, claims administrator's decision, the Office of Judges held that the requested transforaminal epidural steroid injections do not constitute medically necessary and reasonably required treatment in relation to the compensable lumbar sprain/strain. The Board of Review affirmed the reasoning and conclusions of the Office of Judges in its decision dated July 6, 2016. On appeal, Mr. Davis asserts that the evidence of record clearly demonstrates that the requested transforaminal epidural steroid injections are necessary for the ongoing treatment of the April 14, 2014, injury.

At the outset, the Office of Judges noted that on September 1, 2015, the Board of Review adopted Dr. Scott's conclusion that the majority of Mr. Davis's current pathology is degenerative in nature and predates the claim when denying Mr. Davis's request to add a disc herniation as a compensable diagnosis and also denying his request for authorization for various forms of treatment, including authorization for a pain clinic referral.[2] The Office of Judges also found that in its September 1, 2015, decision, the Board of Review adopted Dr. Mukkamala's conclusion that any treatment provided in a pain clinic would be aimed at the treatment of pre-existing degenerative changes. In light of the Board of Review's prior conclusions, the Office of Judges found that Dr. Scott's most recent determination that the requested injections presently at issue are aimed at treating pre-existing degenerative conditions and should not be authorized is persuasive and, therefore, affirmed the claims administrator's denial of the request for authorization of three transforaminal epidural steroid injections. We agree with the reasoning and conclusions of the Office of Judges, as affirmed by the Board of Review.

---

[2] The September 1, 2015, decision of the Board of Review was not appealed to this Court.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 8, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Margaret L. Workman

4